## MUNSON v. CITY OF NEW YORK.*

(*Circuit Court, S. D. New York.* May 30, 1883.)

PATENTS — INFRINGEMENT — LABOR AND TIME-SAVING SYSTEM OF REGISTERING BONDS—ESTIMATION OF PROFITS.

When the only profits that could have been derived by the defendant in using the system of registering bonds and coupons patented by complainant are the saving in time in the use of complainant's system, the inquiry to be determined by the master is not what profits defendants could have obtained by using such system in the most advantageous way, or under ordinary circumstances, but what they did actually derive by its use as they used it; and where the only evidence before the master is the opinion of a witness as to the value of the time that might be saved under supposed circumstances by the use of such system, the report of the master cannot be sustained.

Exception to Master's Report of Profits, etc.

*Royal S. Crane* and *Luther R. Marsh,* for complainant.

*Betts, Atterbury & Betts,* for defendant.

WALLACE, J. As stated by the master, the evidence upon the accounting before him was wholly directed to the question of the gains, profits, and advantages which have accrued to the defendants by the use of the invention secured by his patent to the complainant. The master finds that the gains and profits for which the defendants are liable are such as arise from a saving of time and labor by the use of the complainant's bond-register beyond that which could have been obtained by the use of the several systems of registration open to them to use. He finds this saving to be equal to two and a half cents per bond per year, and, at this rate, that the total profits derived by defendants up to the time of the accounting, and for which they are liable to the complainant, is the sum of $6,202.40. The defendants have filed exceptions to his finding, which bring up the whole question of the liability of the defendant for profits.

The complainant's patent is for "the preserving, filing, and verifying of bonds, coupons, certificates, and all similar documents by the means and in the manner" substantially as described in the specification. The means or system consists in the employment of a book for the registration of bonds and coupons after they are paid. Each page of the book is adapted, by printing and ruling, to present the paid bond and coupons in their original order of annexation. Spaces are ruled for the bond and for the coupons, and the spaces for the latter are numbered in the inverse order of the time of maturity. When a coupon is paid it is pasted over the ruled space designated for that particular coupon. When all have been paid and the bond

* See 8 Sup. Ct. Rep. 622.

is paid, and each is pasted over the space designated for it, the page presents the bond and coupons in their original order. If a given coupon has not been paid the blank space indicates at once which coupon is missing. The object of the invention is to preserve and present a record of a bond or series of bonds and coupons which can be readily referred to in order to ascertain which have been paid and which have not been paid, and the relative times of payment of each.

The defendants employed 119 of these registers, constructed for the registry of nearly 30,000 bonds and a vast number of coupons. Obviously, the defendants regarded this system of registration as convenient, and as possessing advantages which commended it to them, and it is to be assumed that some benefit must have accrued from its use. The question is, however, whether the defendants derived any pecuniary profits or advantage from the use of the registers, so far as has been made to appear by the evidence before the master.

Several other methods of preserving and filing paid bonds and coupons were open to the use of the public, and the defendants are liable only for the pecuniary advantages which accrued to them by the use of the complainant's system beyond that which would have resulted from the use of the other systems which they had the right to employ in attaining the same end. These pecuniary advantages, as found by the master, consist in economy of time and labor. If there was no saving of time and labor resulting from the use of the complainant's system, there were no profits. Whether there was such a saving is the precise question of fact to be determined upon the proofs. In determining this question it is well at the start to disincumber the case of all the testimony which bears upon the theory that the complainant's system provides a more effectual safeguard against loss from the overpayment of coupons than is secured by the use of the other systems. There was a good deal of speculative assertion to this effect in the testimony of the witnesses. The theory may be true; but, conceding it to be so, the complainant did not prove, or attempt to prove, the pecuniary advantages arising therefrom; and from the nature of the case it would seem impossible to show this unless some *data* can be obtained as to the percentage of loss that arises from the overpayment of coupons by the municipalities or corporations that issue such obligations. Until this can be shown, the first factor in the problem is wanting. The master properly limited his inquiry to the question of the comparative economy of time and labor in the use of the several systems

The system of filing away and preserving paid bonds and coupons most commonly used was the "*en masse*" method, so called, by which they were filed away in packages, with or without classification. Another system in general use was the "Warren" system. This was used by the defendants for the preservation of many of their issues of bonds and coupons. This method consisted of the use of blank books with spaces ruled on their pages for coupons, in which all the coupons of a series of bonds of the same date of maturity are pasted on a given page in the numerical order of the bonds. If any coupon is not paid the space designed for it is left vacant. When the bonds were surrendered or paid they were filed away by themselves.

There was also the system in use in the treasury department of the United States. There books were used upon each right-hand page of which were ruled spaces for coupons, and the coupons of a given bond when paid were pasted on such page in the order in which they would appear as originally attached to the bond. The blank spaces assigned for a particular coupon would indicate that such coupon had not been paid. When the bond was paid it could be pasted on the left-hand page opposite the page for the coupons of that bond; but in practice this was not done, but the bonds when paid were destroyed.

If there was a saving of time and labor by the use of the complainant's system, it arose in one or both of two ways. A certain outlay of time and labor was expended under each of the several systems in filing away or registering the bonds and coupons. A further outlay of time and labor was required after this in ascertaining whether a given bond or coupon had been paid or not, whenever occasion for investigation arose. The proofs are destitute of evidence to show what the expense of this outlay is under any system. This may have arisen, and probably did, from the intrinsic difficulty of making any such proof. It may very well be conjectured that quite a clerical force would be needed by a corporation which has issued a great number of bonds of different series, and that a less force could do the work under one system than under another. But conjecture does not supply the place of evidence, and will not satisfy the law. The complainant's case fails to present the necessary elements of comparison by which the amount of pecuniary advantage can be ascertained.

The master reached his finding upon the testimony of Mr. Hall, a witness who had been the treasurer of a railroad corporation, and had used the complainant's system. Prior to using this system he

had been accustomed to file away the coupons in packages. He testified that under the *en masse* system if a question arose as to the payment of a coupon, it was necessary to examine a package, whereas, by the complainant's system, as soon as the coupons were paid they were pasted in the proper blanks, and if a question arose as to the payment of a coupon it could be determined by a glance at the proper page. He was then asked: "What, in your judgment, would be the advantage or benefit in money for the use of the plan in question?" He answered: "The answer to that question is, of course, an estimate. In my opinion the saving of labor in an accountant would amount to at least half a dollar on a bond; the number of dollars in the bond makes no difference, but the length of time which the bond is to run does, as for each additional year there would be two additional coupons. I fix my estimate on the average of 20 years." This was not only a merely arbitrary estimate, but it was based upon a comparison between the complainant's system and the method which most remotely approximated to that system of all those which the defendant had a right to employ. The defendant actually employed the "Warren" system contemporaneously with the complainant's. As is fairly contended for the defendant, it is obvious that under the Munson system, whenever coupons mature, every page of every book of the series must be separately resorted to for the purpose of pasting in a separate coupon in its appropriate place. If 10,000 coupons are paid on a given day, 10,000 separate pages must be resorted to, and a coupon pasted in each page in its proper place. Under the "Warren" system only a few pages would have to be resorted to. This one consideration of utility and convenience in the ordinary and necessary handling of the books at every date of maturity of coupons, outweighs any that can be imagined in case of special instances when reference to particular coupons may be desired.

Irrespective of the fallacious standard of comparison adopted by Mr. Hall and accepted by the master, the opinion expressed by Mr. Hall was not founded on any specific or definite basis of fact. Under any system of registration the expense would depend upon the number of bonds and coupons to be registered. One employe might do the required work for one corporation, while many might be required by another corporation. One corporation might be served at a small expense, while another might be required to incur a large expense. The system that might be less expensive and more convenient with some corporations might be found more expensive and less convenient in others. The experience of a witness in the use of the

several systems by one corporation which might enable him to speak intelligently as to their relative economical merits there, would be of no practical assistance in enabling him to decide as to the relative economy of their use by another corporation. The inquiry here was to ascertain, not what profits the defendants could have obtained by using the complainant's system in the most advantageous way, or under ordinary circumstances, but what they did actually derive by its use as they used it. There was no evidence before the master by which that inquiry could be satisfactorily answered.

The exceptions are sustained.